



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

N'Dama Miankanze Bamba
-----------------------------------------------------X
Plaintiff,

**COMPLAINT**

Kimberly Fenton

**Jury Trial Demanded**

STONY BROOK UNIVERSITY HOSPITAL
(also known as SUNY at STONY BROOK
HOSPITAL)
-----------------------------------------------------X
Defendants.

### I. Parties:

Plaintiff N'Dama Miankanze Bamba, resides at 3600 Rosedale Road, Baltimore, Maryland 21215.

Defendant Kimberly Fenton, resides at, or its business is located at: Stony Brook University Hospital, Department of Pediatrics, 101 Nicolls Road, HSC 11-040, Stony Brook, New York 11794.

The address at which I sought employment or was employed by the defendant(s) is:
Stony Brook University Hospital, Department of Pediatrics, 101 Nicolls Road, HSC 11-040, Stony Brook, New York 11794.

II. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 2000e to 2000e-17, 42 U.S.C. §§ 1981, 42 U.S.C. § 12203 and any related claims under New York Law.

1

## II.     Statement of Claim:

After submitting a formal complaint of retaliation to the Equal Employment Opportunity Commission (EEOC) May 17th 2013 and complaint of mistreatment to the New York State Physician Board on May 5th 2013, the retaliation Dr. N'Dama Bamba was subjected to worsened. At that time, I was employed as a resident physician/assistant clinical instructor in the Internal Medicine/Pediatrics Program at Stony Brook University,

Initially, when I began working at SBUH, I was treated fairly well and consistently praised for my performance by administrators, co-workers and supervisors. Unlike most of my co-workers, I graduated from the Johns Hopkins University School of Medicine and have several years of research and public health experience. After completing an in-house (i.e. hospital specific) end of year graduate medical education survey covering topics on the learning and training environment in March 2012; of which we were informed were anonymous, my academic standing in the Internal Medicine/Pediatrics Program changed for worst. I began to obtain poor performance evaluations and was severally penalized for instances that typically would not lead to probation and/or reprimanding.

In June 2012, I learned I would be promoted to second year without supervisory privileges on internal medicine and pediatric rotations. Usually, when an intern resident physician is promoted to the second year, he/she is granted supervisory privileges. Prior to this performance evaluation, I was never informed that there were concerns at a departmental level about my performance. My program director informed me that no remediation plan was developed and no specific measures were being provided for me to track my progress. Despite expressing concerns to my program directors and seeking the assistance of key administrators, no remediation plan was ever developed. Typically when a concern about a resident physician's performance is raised and promotion is impacted a remediation plan is developed to aid the resident physician improve any perceived deficiencies.

On August 6th 2012, I received a Letter of Warning even after notifying an office staff member that I would be late to general pediatric clinic. Later in Sept. 2012, my arriving late to a scheduled work shift that was not clearly documented in the work schedule was considered a

2

violation of the Letter of Warning. Despite appropriately contacting my immediate superiors when I was informed I was scheduled to work, I was placed on probation by my program directors October 4th 2012.

Note: my placement on probation coincided with the time I submitted a transcript of a prior meeting I had with program directors, Dr. Kimberly Fenton and Dr. Robert Reilly, regarding the promotion process to second year without supervisory privileges. When I sensed my concerns were not being addressed, I inquired about transferring from the SBUH IM/P program to another training program. Very little information was then provided. Although traditionally, when an inquiry is made, it is the responsibility of the resident director(s) to facilitate the process of a resident physician transferring to another institution. I also sought the assistance of the Dean of Graduate Medical Education/Deputy Institutional Officer (DIO), Dr. Frederick Schiavone, in September 2012 regarding the concerns I brought to my programs directors' attention. At our formal meeting in October 2012, he informed me his role was limited at the university and that he would be unable to intervene on my behalf. His recommended solution to my inquiry was that I should obtain a mentor.

In January 2013, I was pronounced in good standing and granted supervisory privileges for internal medicine rotations; similarly, I was asked by my program Director, Dr. Kimberly Fenton not to leave the SBUH institution. I was also informed promotion to supervisory status in pediatrics would be dependent on my performance in the internal medicine rotations. In February 2013, I attended a follow-up meeting with program directors where I was told there were no major concerns. In March 2013, I was granted supervisory privileges for pediatrics rotations.

In April 2013, resident physicians at SBUH were required to complete the annual Accreditation Council of Graduate Medical Education (ACGME) survey highlighting topics such as educational environment and resident treatment. The ACGME is responsible for accrediting residency programs across the United States. On April 15th 2013, I was awarded a resident physician grant from the American Academy for Pediatrics (AAP), which my program director vowed the IM/P Program, Pediatrics Department and institution would provide support and assistance as obtaining the grant was viewed as achieving a prestigious award. In May 2013,

3

during a residency meeting, Dr. Fenton revealed the ACGME Survey results suggested approximately 25% of the Internal Medicine/Pediatrics program trainees raised concerns in areas such as resident mistreatment. In May 2nd 2013, I was informed I would be placed on probation for concerns of professionalism, medical knowledge and patient care. When clarification was sought, Dr. Fenton insisted concerns surrounding placement on probation was not a matter for debate or discussion; she also informed me that the AAP resident grant would be returned to the organization out of concern I acquired the grant unprofessionally. In June 2013, I learned issues I raised in my ACGME survey were in domains for which the SBUH IM/P program received citations in the past; poor evaluations could threaten the accreditation of the program.

    Given this was the second time, for unclear reasons, my academic standing was impacted and I was unable to receive assistance of administrators at SBUH in resolving this matter, I sought the advice of a confidant whom suggested the events occurring at SBUH appeared consistent with discrimination and possibly subjected to violation at the state and federal level. Subsequently, the New York State Physician Board and EEOC were contacted. With ongoing investigations due to my filing of a formal complaint with the EEOC, on June 20, 2013, my main manager, Dr. Kimberly Fenton, Internal Medicine/Pediatrics Residency (IM/P) Co-Program Director and Dr. Shabbir Hossain IM/P Co-Program Director informed me my contract would be terminated August 31st 2013. They also informed me that I would not be promoted to my third year of training although I was previously asked to renew my contract for the 2013-2014 year February 13th 2013; At the same meeting on June 20, 2013, Program Directors, Dr. Kimberly Fenton and Dr. Shabbir Hossain, gave me the option of resigning in June 2013 or being terminated in August 2013. June 25th 2013, I submitted an Appeal of Termination to the office of the Dean of Graduate Medical Education/Deputy Institutional Officer. Since the date I received notification of termination, I was not granted the opportunity to seek other residency training opportunities. On one occasion, July 11th 2013, Dr. Shabbir Hossain allowed me to use approximately four hours to contact other potential residency programs about transferring to their facility as a resident physician. According to Dr. Fenton, I was expected to be present for every scheduled work shift although I was not informed my privileges to treat patients at any SBUH affiliated facility was revoked. In July 2013, Dr. Kimberly Fenton informed me the Chairperson of the Pediatrics Department, Dr. Margaret McGovern, was very upset to learn I was allowed a few hours to seek a training position outside of SBUH.

When I met with the DIO in July of 2013, he shared with me an excerpt from a biased evaluation Emergency Medicine Pediatrician, Dr. Karl Kaplan wrote. The DIO also informed me of the existence of other performance evaluations that had become apart of my personal file; theses evaluation were not available in the central evaluation portal so I was never aware they existed as all performance evaluations are suppose to be placed in the central portal. When I inquired about viewing the evaluations not available in the central portal at the meeting in July, he indicated that he would have to follow-up with me because the physicians wrote their evaluations in confidentiality. At the same meeting, I shared with the DIO concerns raised about my performance from the evaluations on the central portal system appeared to be coming solely from the Pediatrics Department as my evaluations from the Internal Medicine Department were good. A few days after the meeting with the DIO, my end of the year evaluation in Internal Medicine was unsatisfactory in all areas. On July 24th 2013, when I met with the Internal Medicine Program Director, Dr. Lane, the director of the Med-Peds Promotion Committee, Dr. Kranz, and IM/P Co-Program Director, Dr. Shabbir Hossain, they indicated the end of year evaluation was based on a summary of all of my internal medicine performance evaluations during the 2012- 2013 year. When I informed them, the end of year evaluation was inconsistent with my evaluations listed in the central portal, the Med-Peds Promotion Committee was unable to clarify the discrepancy between the end of year evaluation and my performance evaluations in Internal Medicine posted on the central portal. Note: From May 2013 to July 2013, I made inquiries to Dr. Fenton about the evaluations she referenced but were not available on the central portal. To date, I was never granted access to those evaluations.

In August 2013, the Dean of Graduate Medical Education/Deputy Institutional Officer informed me the decision surrounding my termination stood. Consequently, I was terminated effectively August 31, 2013. Within the same month, a prospective training program director informed me I would not be considered for a job position as a result of being described as a medical liability by Dr. Kimberly Fenton.

In November 2013, I submitted applications to obtain a resident physician position. Though a letter of recommendation from one's previous training program is expected to accompany the application, I was unable to secure a letter of reference from Dr. Kimberly Fenton or Dr. Shabbir

5

Hossain's office. Similarly, I was unable to obtain a letter of recommendations from physicians whom agreed to write a letter of recommendation on my behalf prior to my leaving the Internal Medicine/Pediatrics Program at Stony Brook. When I received a job interview, prospective employers expressed strong interest in hiring me; however, the interest changed after conversing with my previous program director, Dr. Kimberly Fenton.

On April 21st 2014, the American Board of Pediatrics, an entity whom certifies physician training, informed me Dr. Kimberly contacted them to request that I not received credit for 12 months (i.e. July 2012- June 2013) of training I completed while working at SBUH. The notice indicated of the 26 months out of 48 months required for completing training in Internal Medicine and Pediatrics, I would be eligible to receive only 14 months of credit. It also indicated if more than 48 months was spent out of practice, I may become ineligible to retain the 14 months of credit previously obtained.

During July 2014, I contacted Dr. Kimberly Fenton and Dr. Shabbir Hossain, about obtaining a letter of reference to accompany my application to obtain a resident position for the 2014-2015. When I was unable to reach either physician via the telephone, I sent a letter in August 2014. On September 11th 2014, Dr. Shabbir Hossain indicated a letter or reference would be sent to prospective employers (i.e. program directors) based on the evaluations kept in my personal files. Since August 2013, I have not yet returned to work as a resident physician. Continued retaliation by Dr. Fenton and key staff/administrators of Stony Brook University Hospital Internal Medicine/Pediatric Program not only has impacted Dr. Bamba's employment status at Stony Brook University Hospital but has also delayed advancement of Dr. Bamba's career. For the aforementioned reasons, I believe my previous employer have retaliated against me and continues to take measures to limit my opportunities to resume work as a resident physician.

### III. Remedy:

As a result of actions taken by Dr. Kimberly Fenton and staff at Stony Brook University Hospital, I am requesting the following relief:

1). Compensation for loss of salary as a result of termination in August 2013.

2). Reimbursement for moving from New York, reapplication to obtain a resident physician position and professional development.

3). Dr. Kimberly Fenton to submit amendment to American Board of Pediatrics to remove record of an adverse evaluation to my performance as a Medicine-Pediatrics resident at SUNY at Stony Brook in Stony Brook, NY.

4). A letter of apology from Dr. Kimberly Fenton and/or Stony Brook University Hospital Representative for wrong doing done to Dr. Bamba.

5). Compensation for loss of earning potential as a result of retaliation experienced since employment at Stony Brook University Hospital as Internal Medicine/Pediatrics resident physician.

Date: March 13, 2014

*signature: N'Dama Bamba*

N'Dama Miankanze Bamba, MD

Address:  3600 Rosedale Road,
          Baltimore, Maryland 21215

Telephone: 443-690-0484

*FILED*
2015 MAR 14 PM 11: 16
U.S. DISTRICT COURT
CLERK

EEOC Form 161 (11/09)     U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: N'Dama M. Bamba<br>3600 Rosedale Road<br>Baltimore, MD 21215 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-00179 | Thomas Perez,<br>Investigator | (212) 336-3778 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,     12-15-14<br>
District Director     *(Date Mailed)*

Enclosures(s)

cc: Michele Lemoal-gray, Esq.<br>
Associate Counsel<br>
STONY BROOK UNIVERSITY<br>
328 Admin Building<br>
Stony Brook, NY 11794

3603 Rosedale Road
Baltimore, MD 21215

Atta: Clerks Office, Pro Se
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY

*FILED*
2015 MAR 14 PM 11:15
CLERK
U.S. DISTRICT COURT
E.D.N.Y.
AFTER HOURS DROP BOX